UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:15CV-00401-JHM

CHAD CARVER                                                                                    PLAINTIFF

V.

UNITED STATES OF AMERICA                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, United States of America, to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for summary judgment pursuant to Fed. R. Civ. P. 56 [DN 11]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

This action arises from the denial of benefits under the Traumatic Servicemembers' Group Life Insurance Program ("TSGLI") by the United States Army Board for Correction of Military Records ("ABCMR" or "Board"). Plaintiff is a former member of the United States Army National Guard who suffered an ankle injury during a forklift accident. Plaintiff filed a claim for benefits under the TSGLI on February 27, 2012. The Army denied Plaintiff's claim for benefits on the basis that Plaintiff was unable to provide sufficient documentation to support his claim for loss of ability to independently perform two or more activities of daily life ("ADL") for at least 30 consecutive days. After several administrative appeals and a final denial, Plaintiff filed suit against the United States on May 26, 2015. The United States now moves to dismiss for lack of subject matter jurisdiction. In the alternative, the United States moves for summary judgment.

## II. SUBJECT MATTER JURISDICTION

"The Traumatic Servicemembers' Group Life Insurance program (the "Program" or "TSGLI") is an automatic rider to the Servicemembers' Group Life Insurance Program, codified at 38 U.S.C. §§ 1970–1980A." Koffarnus v. United States, 2016 WL 1261155, *1 (W.D. Ky. Mar. 30, 2016). "The Program provides a benefit when a servicemember suffers a traumatic injury." Id. (citing 38 U.S.C. § 1980A). The statute provides that "[t]he district courts of the United States shall have original jurisdiction of any civil action or claim against the United States" brought under the Servicemember's Group Life Insurance Program. 38 U.S.C. § 1975.

The United States argues that the Court lacks subject matter jurisdiction over Plaintiff's claims because the complaint's prayer of relief seeks a judgment of money damages. Contrary to the United States' argument, Plaintiff requests specific relief for statutory benefits to which he alleges he is entitled, not money or compensatory damages. Furthermore, even if a portion of the relief Plaintiff requests is inappropriate, subject matter jurisdiction is not destroyed in the present case. The Court has subject matter jurisdiction under 38 U.S.C. § 1975 to hear Plaintiff's claim for alleged wrongful denial of benefits under the TSGLI. Koffarnus, 2016 WL 1261155, *1.

## III. SUMMARY JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

## IV. DISCUSSION

### A. Benefit Application and Appeals

Plaintiff enlisted in the United States Army National Guard on June 30, 2005.  Upon completion of training, Plaintiff was assigned to the North Carolina Army National Guard, 211th Military Police Company in Clyde, North Carolina.  In conjunction with his duties to the North Carolina Army National Guard, Plaintiff also held a civilian job at Haywood Builders Supply in Waynesville, North Carolina.

On February 22, 2006, Plaintiff was injured in a forklift accident which crushed his left ankle between a forklift and cement wall.  This accident resulted in a pilon fracture to Plaintiff's left ankle and an open left lateral malleolus fracture.  CAR 93-117.  Plaintiff was taken to the hospital via ambulance and had surgery performed on his left ankle the same day.  Plaintiff remained hospitalized for the next four days.  Id.  On February 23, 2006, Plaintiff met with an occupational therapist at the hospital who indicated that Plaintiff was non-weight bearing on his left lower extension, had an external fixator, and would need "Min A" assistance for lower body ADLS and supervision with toileting.  CAR 238.[1]  Plaintiff was discharged from the hospital on February 26, 2006.   Plaintiff's discharge summary stated: "The patient is to ambulate nonweightbearing on left lower extremity.  He is to elevate his left lower extremity at all times at rest to help decrease swelling."  CAR 236.  His discharge equipment included a bedside

---

[1] Interestingly, citing the final denial of benefits by the ABCMR, the United States in its statement of facts characterizes the occupational therapist's notes to imply that Plaintiff could function independently.  However, this information is found in the Occupational Therapy notes under the heading of "Learning Needs and Preferences" and the subheading of "Evaluation."  The four choices were (i) can function independently and verbalizes knowledge; (ii) needs review/assistance; (iii) unable to learn; or (iv) unwilling to learn.  CAR 239. The occupational therapist's checkmark of the first box only reflects that the patient can understand the information received in the meeting and verbalizes that knowledge. It has no bearing on Plaintiff's physical condition.

3

commode, shower chair, and a wheelchair. CAR 241. Plaintiff's father submitted a statement in which he stated that Plaintif required stand-by assistance in order to safely bathe and dress. CAR 133-134.

On March 13, 2006, Plaintiff had a follow-up surgery to repair his left tibial plafond fracture and was discharged on March 16, 2006. Hospital records reflect that Plaintiff required stand-by assistance with personal hygiene and general mobility. Discharge instructions indicated that "[t]he patient is to keep his left ankle elevated above his heart as much as possible. He has been provided with a 3D walker boot for his left lower extremity which he will wear to keep his ankle and hindfoot immobilized in neutral position." CAR 109. The discharge notes further indicates that "[t]he patient is not to get his left leg wet at this time. He will maintain strict touchdown weightbearing only on the left lower extremity. . . . The patient has been provided with appropriate home equipment including wheelchair with elevated leg rest, walker, and 3-in-1 chair." Id. Plaintiff's father's statement indicated that Plaintiff continued to require stand-by assistance in order to safely bathe and dress from the date of injury until "on after July 22, 2006." CAR 133-134.

The record reflects that on May 23, 2006 (90 days after the traumatic injury), Plaintiff's treating physician Dr. C. Michael LeCroy authorized Plaintiff to begin a program of progressive weightbearing to his left lower extremity. Specifically, the doctor ordered therapy to "start 50% partial weightbearing and advance as tolerated over the next three to four weeks to full weightbearing." CAR 155. In addition to his treatment and rehabilitation, Plaintiff required an ankle fusion surgery in June of 2006.

Plaintiff submitted his application for TSGLI benefits on February 27, 2012, claiming he was unable to perform four ADLs for at least 90 days. In addition to the medical records,

4

Plaintiff's application included a Medical Professional's Statement by Dr. Dennis K. Hopkins. Dr. Hopkins reviewed Plaintiff's medical records and certified that Plaintiff had experienced an inability to independently bathe, dress, toilet, and transfer from February 22, 2016 through May 23, 2006, and that he required hands-on and stand-by equipment to complete these activities. CAR 14-16. Specifically, Dr. Hopkins noted that Plaintiff needed "assistance to undress, get into bath, and bathe lower extremities," and "assistance with pants, socks, and footwear." CAR 14. Dr. Hopkins further noted that Plaintiff "was unable to bear weight on his left leg and had fixation and immobilizer on his left lower extremity." CAR 15. The application was denied on June 18, 2012.

Plaintiff submitted a request for reconsideration of the denial of his TSGLI claim to U.S. Army Human Resources Command on August 22, 2012. On February 13, 2013, the TSGLI Special Compensation Branch denied Plaintiff's reconsideration request, stating "[i]f a person is able to ambulate with adaptive devices such as wheel chair, crutches, use a bed side commode, shower chair plus a 3D walker boot then they do not qualify for these ADL loses." CAR 118. Dr. Benjamin G. Withers, a TSGLI Program Physician Consultant, conducted a review of the medical records and opined that the "[o]therwise healthy Pts are not rendered ADL-incapable by single limb trauma/dysfunction/immobilization. Submitted documents do not indicate that the injury rendered the claimant incapable of performing ADLs at any point in time, per TSGLI guidelines." CAR 123.

On June 21, 2013, Plaintiff's counsel submitted a second appeal which included the medical certification, medical records, and a detailed caregiver statement from Plaintiff's father. Plaintiff's father indicated that upon his release from the hospital in February of 2006, Plaintiff had "a halo fixed to his leg and ankle with metal pins fixed into the bones in his leg and ankle."

5

CAR 133. Further, Plaintiff's father provided that from the date of the injury until "on after July 22, 2006 he had to be assisted with bathing, eating, dressing, eating, transferring to and from bed, using the bathroom and controlling his bowels because he was unable to urinate or excrete his stool." His father stated that "[i]n this time from 2-22-06 to 5-22-06, I would bathe my son, feed him, helped him get out of wheelchair and back in after using the restroom." Id.

On August 20, 2013, the TSGLI Special Compensations Branch denied Plaintiff's appeal finding:

> The medical documents submitted for your event which took place on 22 February 2006, in North Carolina did not indicate you met the TSGLI Standard for loss of Activities of Daily Living (ADLs). The medical documentation you submitted did not indicate that your ankle injury rendered you incapable of performing the ADLs of bathing, dressing or transferring that are covered by TSGLI standards for 30 consecutive days or greater. If the Soldier is able to perform the activity by the use [of] accommodating equipment/adaptive measures (such as cane, crutches, wheelchair, etc.), then the Soldier is considered able to independently perform the activity.

CAR 156. The five-member Appeals Review Panel, including membership of the Command Surgeon, unanimously voted to deny Plaintiff's appeal. The panel noted that "Medical documents provided do not suggest SM was incapable of performing basic ADLs for 30 or more days. Discharge documentation dated 23 days after injury state external fixator was removed. SM was placed in a walker boot with touchdown weightbearing to left lower extremity. SM was provided with a wheelchair, walker, and shower chair." CAR 158.

On January 3, 2014, Plaintiff submitted a final administrative appeal in the form of an Application for Correction of Military Record. On November 17, 2014, the ABCMR denied Plaintiff's appeal via letter dated November 12, 2014, in relevant part stating:

6

DISCUSSION AND CONCLUSIONS:

1. The evidence shows the applicant was injured at work in February 2006 and he suffered a left ankle crush injury that was surgically repaired that same day. He was hospitalized for 3 days. He underwent a second surgery in March 2006 and a third surgery in June 2008.

2. Counsel now contends the applicant was unable to bathe, dress, and transfer independently from 22 February 2006 through 23 May 2006, a period over 90 days. However, he provided contemporaneous medical documentation that shows the applicant underwent an occupational therapy evaluation on 23 February 2006 and the therapist determined he could function independently.

3. ADL loss must be certified by a healthcare provider in Part B of the claim form, and ADL loss must be substantiated by appropriate documentation such as Occupational/Physical Therapy Reports, Patient Discharge Summaries, or other pertinent documents demonstrating the injury type and duration of ADL loss. While TSGLI claims will not be approved without a certification from a healthcare provider, additional documentation must be provided to substantiate the certification.

4. Counsel provided a TSGLI application filed 6 years later in which the applicant's attending physician stated he was unable to perform 3 ADLs during the period 22 February 2006 to 23 May 2006. However, no substantiating documentation was attached.

5. Counsel's remaining contentions and the supporting documentation provided were carefully considered. However, the submitted documentation does not indicate that the injury rendered the applicant incapable of performing any ADLs for 30 days or more, per TSGLI guidelines. In addition, it appears he first applied for TSGLI about 6 years after the accident.

6. Otherwise healthy patients are not rendered ADL incapable by a single limb trauma/dysfunction/immobilization.

7. Regrettably, based on the foregoing, there is an insufficient evidentiary basis for granting the requested relief.

CAR 167-168.

On May 26, 2015, Plaintiff filed this action challenging the Army's denial of his TSGLI benefits.

### B. Applicable Law/Standard of Review

Pursuant to 38 U.S.C. § 1980A(a) and (b), a service member is entitled to TSGLI benefits if he or she sustained a "traumatic injury . . . that results in a qualifying loss." 38 U.S.C. § 1980A(a)(1). The statute defines a "qualifying loss" as "the inability to carry out the activities of daily living resulting from traumatic injury." 38 U.S.C. § 1980A(b)(1). The "inability to carry out the activities of daily living" is further defined as "the inability to independently perform two or more of the following six functions: (i) Bathing, (ii) Continence, (iii) Dressing, (iv) Eating, (v) Toileting, [and] (vi) Transferring." 38 U.S.C. § 1980A(b)(2)(D)(i)-(vi); 38 C.F.R. § 9.20(e)(6)(vi). Benefits will only become available after a service member has experienced at least 15 consecutive days of ADL loss (if due to a traumatic brain injury) or 30 consecutive days of ADL loss (if due to something other than a traumatic brain injury). 38 C.F.R. § 9.20(f)(17), (20). TSGLI will pay $25,000 for each consecutive 30–day period of ADL loss, up to a maximum of $100,000 for 120 consecutive days. 38 C.F.R. § 9.20(f).

"The statute gives district courts jurisdiction to review administrative decisions with regard to TSGLI claims. However, the jurisdictional grant does not set forth the standard of review to be used by the court." Weller v. United States, 2014 WL 5320133, *2 (M.D. La. Oct. 17, 2014)(citing 38 U.S.C. § 1975). In these circumstances, "[c]hallenges to the decisions of military correction boards, such as the [ABCMR], are reviewable under the [Administrative Procedure Act ("APA")], which empowers courts to set aside final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .'" Espinoza v. United States, 2016 WL 1181742, *2 (W.D. Ky. Mar. 25, 2016)(citing 5 U.S.C. §

706(2)(A)). "The arbitrary and capricious standard of review requires that deference be afforded to the reviewing agency." Id. (citing Maple Drive Farms Ltd. Partnership v. Vilsack, 781 F.3d 837, 852 (6th Cir. 2015)). "When reviewing an agency action, we must assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . That task involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons." Judulang v. Holder, 132 S.Ct. 476, 483 (2011)(internal citations omitted). See also Koffarnus, 2016 WL 1261155, *5. An agency decision is arbitrary and capricious when the agency:

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

National Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007).

### C. Benefit of the Doubt Rule

The Plaintiff argues that the ABCMR should have applied the "benefit of the doubt" rule to his claim for traumatic injury benefits. Under the benefit of the doubt rule, "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." 38 U.S.C. § 5107. See Koffarnus, 2016 WL 1261155, * 6 n. 6. Plaintiff did not raise this argument before the ABCMR. See CAR 172, 176-177 (citing preponderance of the evidence as the appropriate standard of review for the ABCMR). This same issue was addressed by the district court in Koffarnus who declined to consider this argument. "'The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency

9

involved.'" Koffarnus, 2016 WL 1261155, *6 (quoting Coalition for Government Procurement v. Federal Prison Indus., Inc., 365 F.3d 435, 461–62 (6th Cir. 2004)).  Based on this law, the Court will not consider the Plaintiff's argument that the ABCMR should have applied the benefit of the doubt rule because Plaintiff did not raise it before the ABCMR.

### D.  Whether ABCMR acted arbitrarily and capriciously

The United States concedes that Plaintiff suffered a covered traumatic injury. (Defendant's Motion at 3 n. 6.)  The dispute pertains to whether Plaintiff suffered a "qualifying loss" under the TSGLI schedule of losses.  The United States argues that the ABCMR's decision to deny Plaintiff's TSGLI claim was reasonable because the Plaintiff failed to establish that he could not independently perform at least two or more of the ADLs for at least 30 days as required under the TSGLI program.

After a review of the administrative record, the Court finds that the ABCMR acted arbitrarily and capriciously in denying Plaintiff's claim for traumatic injury benefits under the TSGLI program.  The documents submitted by Plaintiff contradict the ABCMR's conclusion that "the submitted documentation does not indicate that the injury rendered the applicant incapable of performing any ADLs for 30 days or more, per TSGLI guidelines." CAR 168.  The documents submitted by Plaintiff show that he was incapable of independently performing at least three ADLs, dressing, transferring, and bathing, for 90 days or more.

Plaintiff submitted a medical certification from Dr. Dennis K. Hopkins.  Dr. Hopkins reviewed Plaintiff's medical records and certified that Plaintiff had experienced an inability to independently bathe, dress, toilet, and transfer from February 22, 2016 through May 23, 2006, and that he required hands-on and stand-by assistance to complete these activities. CAR 14-16.  Specifically, Dr. Hopkins noted that Plaintiff needed "assistance to undress, get into bath, and

bathe lower extremities," and "assistance with pants, socks, and footwear." CAR 14. Dr. Hopkins further noted that Plaintiff "was unable to bear weight on his left leg and had fixation and immobilizer on his left lower extremity." CAR 15. While Dr. Hopkins' certification of Plaintiff's limitations are not based on percipient testimony involving direct observation of the Plaintiff's limitations, the Plaintiff supplemented the certification with his medical records and a statement of his caregiver.

The medical records contained in the Administrative Record consist of Plaintiff's hospital records, discharge instructions, medical records from his treatment at Blue Ridge Bone & Joint, follow-up treatment by Dr. LeCroy, and occupational/physical therapy records during the relevant time period. The medical records corroborate Dr. Hopkins' assessment of Plaintiff's incapacity for performing at least two ADLs without assistance for at least 90 consecutive days. The medical records reflect that Plaintiff suffered a pilon fracture to Plaintiff's left ankle and an open left lateral malleolus fracture. He underwent surgery immediately and was initially hospitalized for five days in February. While hospitalized, Plaintiff met with an occupational therapist who noted that Plaintiff was "non-weight bearing on his left lower extension," had an external fixator, would need assistance for lower body ADLs, supervision with toileting, and would return home with supervision. CAR 238. Plaintiff was discharged from the hospital with a bedside commode, shower chair, and a wheelchair. CAR 241.

In March of 2006, Plaintiff had a follow-up surgery to repair his left tibial plafond fracture and was discharged on March 16, 2006. Hospital records reflect that Plaintiff required stand-by assistance with personal hygiene and general mobility. Discharge instructions indicated that Plaintiff was provided a 3D walker boot to keep his ankle and hindfoot immobilized, was instructed not to get his left leg wet, and was provided with home equipment including

wheelchair with elevated leg rest, walker, and 3-in-1 chair." CAR 109. On May 23, 2006 (90 days after the traumatic injury), Plaintiff's treating physician authorized Plaintiff to begin a program of progressive weightbearing to his left lower extremity. In June of 2006, Plaintiff required an ankle fusion surgery in June of 2006. These medical records, considered in light of the physician's certification and Plaintiff's father's letter, contradict the ABCMR's denial of TSGLI benefits. Koffarnus, 2016 WL 1261155, *8 (citing National Ass'n of Home Builders, 551 U.S. at 658 (a reviewing court may find an agency decision arbitrary and capricious if the decision runs counter to the evidence before the agency)).

Furthermore, a review of the medical records cited by the Board reveals that the ABCMR misinterpreted a portion of the medical records. For example, in denying Plaintiff's claim, the ABCMR states that Plaintiff "provided contemporaneous medical documentation that shows the applicant underwent an occupational therapy evaluation on 23 February 2006 and the therapist determined he could function independently." CAR 167. The ABCMR incorrectly found that the occupational therapist concluded that immediately following Plaintiff's initial surgery, Plaintiff could physically function independently. This assessment by the ABCMR is in error. This statement is found under the heading of "Learning Needs and Preferences" and the subheading of "Evaluation." The four choices were (i) can function independently and verbalizes knowledge; (ii) needs review/assistance; (iii) unable to learn; or (iv) unwilling to learn. CAR 239. The occupational therapist's check of the first box only reflects that the patient mentally understands the information received in the occupational therapy meeting and verbalizes that knowledge. It has no bearing on Plaintiff's physical condition. In fact, a review of the entire occupational therapy notes from February 23, 2006, reveals that the therapist acknowledged that Plaintiff needed assistance with lower body ADLs, supervision toileting, and

12

would be sent home with supervision. CAR 238.

In addition to the medical certification and medical records, Plaintiff also submitted a detailed caregiver statement of Defendant's father in which he stated that Plaintiff could not bathe, dress, transfer, or toilet without assistance from him. CAR 133. Plaintiff's father indicated that from the date of the injury until "on after July 22, 2006 [Plaintiff] had to be assisted with bathing, eating, dressing, eating, transferring to and from bed, using the bathroom . . . ." Id. His father stated that "[i]n this time from 2-22-06 to 5-22-06, I would bathe my son, feed him, helped him get out of wheelchair and back in after using the restroom." Id. Interestingly, the ABCMR did not address this letter even though the letter provided significant support for his claim, including the type or duration of assistance that Plaintiff required. See Fail v. USA, 2013 WL 5418169, *13 (D. Colo. Sep. 27, 2013). "When the medical records do not explicitly address a patient's inability to independently perform the activities of daily living, letters from caregivers provide strong corroborating evidence of a patient's claim." Koffarnus, 2016 WL 1261155, *7 ("At the very least, the Board needed to respond to Koffarnus's spouse's letter, which corroborated her claim and was not frivolous."). See also Conner v. U.S. Dept. of the Army, 6 F. Supp. 3d 717, 723 (W.D. Ky. 2014) (an agency decision may be arbitrary and capricious if the agency does not address a nonfrivolous argument made by plaintiff). The ABCMR either failed to consider this evidence or simply discounted it without explanation, either of which would clearly be arbitrary and capricious action.

For these reasons, the Court finds that the ABCMR's decision to deny Plaintiff's final appeal for TSGLI benefits was arbitrary and capricious because the decision ran counter to the evidence presented. Having found the ABCMR's decision arbitrary and capricious, the Court

will vacate the decision. The Court will deny the United States' motion for summary judgment as well.

### E. Summary Judgment in Favor of Plaintiff

Plaintiff has not filed a cross motion for summary judgment, though he asks the Court to grant summary judgment in his favor *sua sponte*. (Plaintiff's Response at 37 n. 6). See also Koffarnus, 2016 WL 1261155, *9-10. The United States acknowledged that it is on notice of the Plaintiff's purported cross motion. "Under Rule 56, the Court may grant summary judgment for a nonmovant after giving notice and reasonable time to respond. See Fed. R. Civ. P. 56(f)(1)." Id. at 10. Just as in Koffarnus, the Court finds that the United States was on notice that the Court may grant summary judgment for Plaintiff. The United States had a reasonable time to respond because it acknowledged Plaintiff's request for *sua sponte* relief in its reply brief. Accordingly, the Court will grant summary judgment to Plaintiff *sua sponte*.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, United States of America, to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for summary judgment pursuant to Fed. R. Civ. P. 56 [DN 11] is **DENIED**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Plaintiff, Chad Carver. The decision of the United States Army Board for Correction of Military Records is **VACATED**. The Court **REMANDS** the case to the Board for proceedings not inconsistent with this Opinion. A Judgment will be entered consistent with this Opinion.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 9, 2016

14